# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM URAL NEEL, | |
| *Petitioner*, | 3:09-cv-00105-ECR-VPC |
| vs. | ORDER |
| JIM BENEDETTI, *et al.*, | |
| *Respondents*. | |

This habeas matter under 28 U.S.C. § 2254 comes before the Court on petitioner's motion (#22) to reopen the case and lift the stay entered previously so that he could seek to exhaust his unexhausted claims.

### *Motion to Reopen and Current Procedural Posture*

Petitioner William Ural Neel seeks to set aside his 2004 Nevada state conviction, pursuant to a guilty plea, of sexual assault of a minor under 16 years of age and lewdness with a child under the age of 14. Petitioner did not file a direct appeal, but he did file a timely state post-conviction petition prior to filing the federal petition in this matter. The sole claim raised and/or considered on the state post-conviction appeal was a claim that petitioner's plea was not voluntary and that he was denied effective assistance of counsel because the state district court and trial counsel allegedly failed to inform him of the specific consequences and conditions of lifetime supervision.

In the federal petition, as amended, petitioner alleges in Ground 5 that his plea was involuntary and that he was denied effective assistance of counsel because neither the state

court nor counsel canvassed petitioner as to the nature, elements and true consequences of lifetime supervision. He alleges that had he been advised of these factors he would not have entered a guilty plea.

None of the remaining claims in Grounds 1 through 4 and 6 through 7 of the amended federal petition were fairly presented to or considered by the Supreme Court of Nevada on the prior post-conviction appeal or otherwise.

The Court directed petitioner to show cause why the federal petition was not subject to dismissal as a mixed petition because Grounds 1 through 4 and 6 though 7 were not exhausted.

In response, petitioner sought a stay to return to the state courts to exhaust the claims. The Court expressly informed petitioner that differences existed between a stay pursuant to *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), and a stay pursuant to *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003). After being so informed, petitioner sought a stay under *Rhines* or in the alternative under *Kelly*. The Court found that petitioner had failed to demonstrate good cause for the failure to exhaust and thus denied a stay under *Rhines*. The Court granted petitioner's alternative request for a *Kelly* stay, pursuant to which Grounds 1 through 4 and 6 through 7 were dismissed without prejudice.

The stay order – a copy of which petitioner attaches with the motion to reopen – directed, *inter alia*, that if petitioner intended to amend the petition that he file a motion for leave to amend the petition when he filed the motion to reopen, along with the proposed amended petition, or a motion for an extension of time to do so.

Petitioner submitted neither a motion for leave to amend nor a motion for extension of time with the motion to reopen. He requests only that the Court lift the *Kelly* stay to move forward in federal court. It further appears that any request for leave to amend to reinstate Grounds 1 through 4 and 6 through 7 in any event likely would be futile. The state court papers attached with the motion to reopen reflect that petitioner failed to take a timely appeal from the state district court's denial of the post-conviction petition filed during the stay. Any claims presented in the petition filed during the stay accordingly would not appear to have

been exhausted. For a claim to be exhausted, it must be fairly presented to the state courts completely through to the highest court available, in this case the Supreme Court of Nevada. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). The assertion of claims via an untimely appeal does not fairly present any claim to the state supreme court. It thus would appear that, even if petitioner *arguendo* could overcome relation back and time bar issues as to the previously dismissed claims, he would not be able to demonstrate that the claims were exhausted during the stay entered for that purpose.

As noted, Grounds 1 through 4 and 6 through 7 previously were dismissed pursuant to the *Kelly* stay procedure. No request has been made to amend the federal petition to present any claims. Accordingly, the only ground before the Court is Ground 5. The Court will grant the motion to reopen; and, for the reasons assigned below, the Court will direct petitioner to show cause why the sole remaining ground remaining in the petition, Ground 5, should not be dismissed with prejudice on the merits.

### *Factual Background*

Petitioner alleges in Ground 5 that his plea was involuntary and that he was denied effective assistance of counsel because neither the state court nor counsel canvassed or advised him as to the nature, elements and true consequences of lifetime supervision. The state court record materials on file reflect the following with regard to this claim.

Neel initially was charged with two counts of sexual assault of a minor under 14 years of age, two counts of lewdness with a child under 14, one count of a sexual offender failing to provide change of address information, and one count of first degree kidnapping. On September 28, 2004, he waived a preliminary hearing on these charges pursuant to a plea deal in which he would plead guilty to one count of sexual assault of a minor under 16 and one count of lewdness with a child under 14. #12, Ex. A.

In the written guilty plea agreement, Neel acknowledged, *inter alia*:

> I further understand that the Court will include as part of my sentence, in addition to any other penalties provided by law, lifetime supervision commencing after any period of probation or

> any term of imprisonment and period of release upon parole; said special sentence of lifetime supervision must being upon release from incarceration.
>
> . . . . .
>
> All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney.
>
> . . . . .
>
> My attorney has answered all my questions regarding this guilty plea agreement and its consequences to my satisfaction and I am satisfied with the services provided by my attorney.

#12, Ex. B, at 3, 5 & 6.

During the plea colloquy, Neel advised the court, *inter alia*, that he was 34 years old; that he had a twelfth grade education; and that he could read, write and understand English. He acknowledged that he had read the guilty plea agreement, that he had discussed it with his attorney, that he understood the agreement, and that he had signed the agreement. He indicated that he did not have any questions and that he did not want anything clarified in the guilty plea agreement. #12, Ex. D, at 6, 9-10 & 16.

Pursuant to the plea, Neel admitted that on August 23, 2004, he inserted his penis into the vagina of a nine-year old child and fondled her genital area. #12, Ex. D, at 13-16.

The state district court found Neel's plea to be freely and voluntarily given and that he understood the nature and consequences of his plea. #12, Ex. D, at 16.

When Neel later sought state post-conviction relief, the district court held an evidentiary hearing. Defense counsel testified that the special sentence of lifetime supervision was fairly new at the time of Neel's plea. She advised her clients that were subject to lifetime supervision, including Neel, that lifetime supervision was similar to probation but not as onerous as probation. Lifetime supervision potentially would involve such conditions as being under the supervision of a probation officer who would have the right to search the defendant and his home, having to keep the probation officer advised of where one lived and worked and whether one was moving out of the state, and being subject to a new felony offense if one reoffended while on lifetime supervision. #12, Ex. S, at 11-14 & 16.

1  Defense counsel further testified that it was her understanding that the precise
2  conditions of lifetime supervision for a particular defendant were not determined until the time
3  when the defendant was released from prison. There thus was no way of knowing what
4  particular conditions would be imposed until that time, such that she advised Neel of all that
5  could be known at the time of the plea as to lifetime supervision. #12, Ex. S, at 22-23.

6  Defense counsel additionally testified that the case negotiated fairly quickly following
7  upon Neel's inquiry – from the outset – as to whether there would be a plea offer. Neel had
8  made a confession in the case, and he also told his counsel that he was guilty. Neel, who
9  "had been through it before," was remorseful and inquiring about a plea deal. The plea deal
10 offered thereafter by the district attorney to, *inter alia*, a charge of sexual assault of a minor
11 under 16 provided Neel substantially less exposure than the initial charges with sexual assault
12 of a minor under 14. Neel accepted the plea offer quickly. #12, Ex. S, at 19-21.

13 The state district court noted during the state proceedings that Neel had two similar
14 prior sexual assault convictions. #12, Ex. D, at 17; *id.*, Ex. S, at 29; *id.*, Ex. T, at 3.

15 Neel did not testify at the evidentiary hearing or present any other testimony.

16 The state district court found in its oral reasons, *inter alia*:

> . . . Ms. Roundtree stated that she told hm generally what the lifetime supervision meant, but he understood that he was going to be supervised in some form or fashion by the State upon his being released, but they had not been definitively stated, which they couldn't be because we don't know what they were going to say, but we knew he would be supervised by Probation to some extent, and she informed him of that.

21 #12, Ex. S, at 29.

22 The state district court made written findings, *inter alia*, that defense counsel advised
23 Neel that he would be subject to lifetime supervision and that she generally told him what
24 lifetime supervision would be like but could not know the specific conditions until they were
25 set when Neel was paroled. #12, Ex. T, at 3.

26 On the state post-conviction appeal, the state supreme court held as follows:

> Neel's sole issue on appeal is that the district court erred by denying his claim that counsel was ineffective for failing to inform him of the specific conditions of lifetime supervision. To

> state a claim of ineffective assistance of counsel sufficient to invalidate a judgment of conviction based on a guilty plea, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. See Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Warden v. Lyons, 100 Nev. 430, 432, 683 P.2d 504, 505 (1984); see also Hill v. Lockhart, 474 U.S. 52, 58-9, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Kirksey v. State, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). The court can dispose of a claim if the petitioner makes an insufficient showing on either prong. Strickland, 466 U.S. at 697.
>
> Neel failed to demonstrate that counsel was deficient or that he was prejudiced. Under Nevada law, the particular conditions of lifetime supervision are tailored to each individual case and, notably, are not determined until after a hearing is conducted just prior to the expiration of the sex offender's completion of a term of parole or probation, or release from custody. Palmer v. State, 118 Nev. 823, 827, 59 P.3d 1192, 1194-95 (2002); see also Johnson v. State, 123 Nev. 139, ----, 159 P.3d 1096, 1098 (2007). In light of the fact that the conditions of lifetime supervision applicable to a specific individual are not generally determined until long after the plea canvass, an advisement about those conditions is not a requisite of a valid guilty plea. Rather, all that is constitutionally required is that the totality of the circumstances demonstrates that Neel was aware that he would be subject to the consequences of lifetime supervision before entry of the plea. Palmer, 118 Nev. at 831, 59 P.3d at 1197.

#12, Ex. X, at 2-3.

### *Governing Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 2066 n.7,138 L.Ed.2d 481 (1997). Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 17, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18,124 S.Ct. at 12; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, the AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

-7-

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence.

### *Governing Substantive Law*

The Supreme Court decisions in *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), sharply curtail the possible grounds available for challenging a conviction entered following a guilty plea. As the Court stated in *Tollett*:

> . . . . [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [constitutional] standards [established for effective assistance of counsel.]

411 U.S. at 267, 93 S.Ct. at 1608. Accordingly, "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." *Id.*

In *Hill*, the Court held that the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to challenges to guilty pleas based on alleged ineffective assistance of counsel. 474 U.S. at 58, 106 S.Ct. at 370. Accordingly, a petitioner seeking to set aside a guilty plea due to ineffective assistance of counsel must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that the defective performance resulted in actual prejudice. 474 U.S. at 58-59, 106 S.Ct. at 370.

On the performance prong, the question is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from counsel's perspective at the time. In this regard, the reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. *E.g., Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004).

On the prejudice prong, as a general matter under *Strickland*, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *E.g., Beardslee*, 358 F.3d at 569. Application of this general principle to the specific context of a guilty plea leads to the requirement that the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

Under *Hill*, a challenge to the voluntariness of a guilty plea potentially may be based upon a claim of ineffective of assistance of counsel in proceedings prior to the plea. As the Court observed:

> . . . . For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. . . . . As we explained in *Strickland v. Washington, supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068.

474 U.S. at 59-60, 106 S.Ct. at 370-71. Thus, an attorney's unprofessional error may serve as a basis for overturning a guilty plea and conviction only if, viewed objectively, there is a reasonable probability that, but for the error, the petitioner would not have pled guilty and would have insisted on going to trial.

The petitioner bears the burden of establishing that he is entitled to federal habeas relief. *Davis*, 384 F.3d at 638.

### *Discussion*

It does not appear that the state supreme court's rejection of petitioner's claim was contrary to or an unreasonable application of clearly established federal law or that it was

based upon an unreasonable determination of the facts based upon the evidence in the state courts.

Petitioner was advised in the guilty plea agreement that he would be subject to a special sentence of lifetime supervision after his release. The state courts found, based upon defense counsel's uncontradicted testimony at the state evidentiary hearing, that defense counsel advised petitioner generally that lifetime supervision would entail continued supervision following his release but that the specific conditions imposed could not be known until they were set at that time. It further appears that petitioner sought out a plea deal from the outset after he confessed guilt and that he obtained the benefit of a substantially reduced sentencing exposure by virtue of the plea. It thus would appear that the state supreme court's holding that petitioner could not establish prejudice was neither contrary to nor an unreasonable application of *Strickland*, *Tollett* and *Hill*. Viewed objectively, it does not appear that there is a reasonable probability that a defendant in Neel's situation would not have pled guilty and would have insisted on going to trial if he had been advised or canvassed differently with regard to the special sentence of lifetime supervision. Given that the specific conditions of lifetime supervision are not set under state law until the time that the defendant is paroled, it is difficult to discern how additional specificity of any significance could have been provided. It further does not appear that, viewed objectively, any such specificity reasonably would have affected the plea decision given the charges, sentencing exposure, and evidence facing Neel if he went to trial and also given that his status as a repeat sexual offender potentially would have weighed heavily at sentencing if he went to trial.

Petitioner accordingly must demonstrate that the state supreme court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or was based upon an unreasonable determination of the facts in light of the evidence presented in the state courts.

IT THEREFORE IS ORDERED that petitioner's motion (#22) to reopen the case and lift the stay is GRANTED and that the Clerk shall REOPEN the case.

////

IT FURTHER IS ORDERED that, within thirty (30) days of entry of this order, petitioner shall SHOW CAUSE in writing why the sole ground remaining before the Court, Ground 5, should not be dismissed with prejudice on the merits and why a final judgment of dismissal should not be entered.

No response is required from respondents, as the matter remains under screening review. Respondents may respond to petitioner's show cause response within thirty (30) days of service if they wish to do so, but they are not required to do so.

DATED:   May 9, 2011.

_____
EDWARD C. REED
United States District Judge